# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SERGIO M. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CIV-19-1100-SM |
| ANDREW M. SAUL, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sergio M. Perez (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 18, 19.

Plaintiff argues the ALJ reopened a prior agency decision, erred in formulating the RFC, and improperly considered Plaintiff's past relevant work. Doc. 20, at 2-12. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

## I.    Administrative determination.

### A.    Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.    Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

### C.    Relevant findings.

####    1.    ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 11-20; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)    did not engage in substantial gainful activity between August 26, 2016, the alleged onset date, and March 31, 2019, the date last insured;

(2)    had the severe medically determinable impairments of patellofemoral arthritis of the left knee, status post June 2013 arthroscopy, and lumbar degenerative disc disease with radiculopathy;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the residual functional capacity[2] (RFC) to perform sedentary work with additional restrictions;

(5)    was capable of performing his past relevant work as an eyeglass polisher; and thus

(6)    had not been under a disability from August 26, 2016, through March 31, 2019.

*See* AR 14-19.

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

**B.    Issues for judicial review.**

Plaintiff argues the ALJ reopened a past claim for benefits, did not properly formulate the RFC, and did not properly consider Plaintiff's past relevant work. Doc. 20, at 2-12.

## III.   Analysis of the ALJ's decision.

### A.    The ALJ did not reopen a prior agency decision.

Plaintiff previously filed a claim for Disability Income Benefits (DIB) alleging disability beginning on May 1, 2013. *See* AR 350 (noting alleged onset date). An ALJ denied Plaintiff's request for benefits on August 30, 2016. *Id.* at 357. The Appeals Council denied Plaintiff's request for review. *Id.* at 363-65. The record does not reflect Plaintiff appealed the denial to a United States District Court.

Plaintiff argues the ALJ reopened Plaintiff's prior claim because he found Plaintiff could return to his past relevant work, while the ALJ in the prior case found the opposite. Doc. 20, at 3. Plaintiff asserts that "[s]ome have suggested that the prior case will be deemed reopened if the ALJ does not apply *res judicata*, and makes a determination considering the prior record." *Id.*

In support, Plaintiff relies on *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). In addition to being non-binding on this Court, *Wolfe* is distinguishable. There, the court held a third ALJ reopened a claim by finding the claimant's educational level was "marginal" and determining two ALJs in

prior claims erred when they found the claimant's educational level was "limited." *Id.* at 1079 ("By determining that the first two ALJs had erred, the third ALJ went beyond evaluating evidence for the purpose of making a reasoned determination of its *res judicata* effect."). Here, the ALJ did not find the first ALJ erred. Instead, he found that Plaintiff could perform his past relevant work from August 26, 2016 until March 31, 2019. AR 12. Such a finding does not amount to a rejection of the first ALJ's finding that Plaintiff could not perform his past relevant work from May 1, 2013, to August 30, 2016.[3]

---

[3]   As the Commissioner acknowledges, Doc. 24, at 7, the first and second decisions have a five-day overlap in the alleged period of disability. *Compare* AR 19 *with* AR 357. But neither Plaintiff nor the ALJ intended an overlap between the two decisions:

> ALJ: Okay. One thing we need to cover, I show an onset date of May 2013.
>
> ATTY: We had a hearing.
>
> ALJ: There was a prior decision.
>
> ***
>
> ATTY: Yes, we have an 8/25/15 hearing decision, Your Honor.
>
> ALJ: Yes, so I presume you want to amend thereafter?
>
> ATTY: Yes, Your Honor.
>
> ALJ: What are you doing to go to?
>
> ATTY: Let's do 8/26/16, Your Honor.

*Id.* at 298-99. Thus, the Court does not find the ALJ intended to overrule the first decision as to the period between August 26, 2015, and August 30, 2015.

Plaintiff also argues the ALJ in his second DIB claim—that at issue here—"freely reference[d] evidence" from the time frame at issue in his prior claim, which "constituted a *de facto* reopening of the prior claim." Doc. 20, at 3. Plaintiff analogizes to *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996), holding that a 1988 SSA determination that the claimant had not engaged in substantial gainful activity was "reopened de facto" when the agency concluded in 1991 that the claimant had engaged in substantial gainful activity since 1984. Unlike *Marshall*, however, the second decision here analyzed a different period than the first.[4]

Additionally, the ALJ properly considered records from the prior period of alleged disability in this claim. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of [the plaintiff's] case record, and should have been considered by the ALJ."); *Frost v. Saul*, No. CIV-19-444-J, 2020 WL 68586, at *3 (W.D. Okla. Jan. 7, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore,

---

[4]     The *Marshall* court noted the case was reopened under 20 C.F.R. § 404.988. 75 F.3d at 1426. Plaintiff has identified no regulatory authority allowing the agency to reopen his case.

7

should also be considered."). Thus, the Court does not find that the second decision amounts to a de facto reopening of the first decision.

**B.     The ALJ properly formulated the RFC.**

**1.     The ALJ included a stooping limitation in the RFC.**

Plaintiff contends the ALJ erred by including a limitation to occasional stooping in his hypothetical question to the vocational expert while failing to include the limitation in the RFC.[5] Doc. 20, at 4-5. The RFC, however, included a limitation to occasional stooping.[6] AR 16, 313. Thus, Plaintiff's claim in this regard lacks merit.

---

[5]     Plaintiff frames this as a step-two issue. Doc. 20, at 4-5. But Plaintiff does not contend the ALJ erred in considering the severity of any impairments. And any error at step two would be harmless because the ALJ found at least one severe impairment. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Plaintiff also argues "[the ALJ] never explained how a severe impairment at step two of the sequential evaluation process can simply disappear at step four." Doc. 20, at 4. But Plaintiff did not identify which severe impairment the ALJ failed to consider at step four, and the Court will not develop Plaintiff's argument on his behalf. *See Chrisman v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (noting "it is not [the court's] role to shore up [the claimant's] argument for him").

[6]     Plaintiff substantively misquoted the ALJ's RFC determination in his opening brief. Doc. 20, at 5 (omitting a limitation to occasional balancing and stooping). The Court reminds Plaintiff's counsel that by presenting a paper to the Court, he certifies that his factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(3). In future filings, counsel should ensure quotations from the record are accurate.

### 2.   Any error in the ALJ's RFC climbing determination is harmless.

Plaintiff contends the ALJ erred by not explaining why the RFC allows for climbing ramps and stairs occasionally when the RFC from the first decision did not allow for climbing at all. Doc. 20, at 5. Relying on *Hamlin*, Plaintiff argues an ALJ is not bound by the prior RFC determination, but that any revision must be supported by substantial evidence. 365 F.3d at 1224 ("It was certainly within the ALJ's province, upon reexamining [the claimant's] record, to revise his RFC category. In this case, however, the ALJ's revised RFC determination was not supported by substantial evidence."). Plaintiff's argument appears to be based on his misplaced theory that the ALJ reopened his prior claim. And because the job of eyeglass polisher does not require climbing, DICOT §713.684-038, 1991 WL 679267, any error would be harmless. *See Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error.").

### 3.   The ALJ did not err in his RFC determination about mental impairments.

Plaintiff argues the ALJ erred by not including a limitation on his contact with supervisors. Doc. 20, at 6. He notes that the ALJ found Plaintiff

had mild limitations in the ability to interact with others in his Paragraph B findings, which Plaintiff asserts includes the ability to relate to and work with supervisors.[7] *Id.* But a finding of mild limitations in the Paragraph B analysis does not require a finding of mental limitations in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) ("[The claimant] also objects that the ALJ omitted from the RFC assessment a mild limitation found at step two regarding concentration, persistence, or pace. However, this court has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps."). Nor does Plaintiff address any evidence from the record suggesting he has a limitation in the ability to interact with supervisors. Thus, the Court finds the ALJ did not err by failing to include a limitation in the RFC about an ability to interact with supervisors.[8]

---

[7]     Plaintiff asserts the ALJ "determined that there would be insignificant contact with the general public, co-workers, and peers." Doc. 20, at 6. But the RFC did not include such limitations. AR 16.

[8]     Relatedly, Plaintiff argues the ALJ should have included limitations related to interacting with supervisors in his hypothetical question to the VE.

10

Plaintiff also argues that the ALJ's finding of non-severity at step two was not a sufficient RFC analysis. Doc. 20, at 7 (citing *Wells v. Colvin*, 727 F.3d 1061, 1064-65 n.3 (10th Cir. 2013)). Plaintiff is correct that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068-69. There, the ALJ stated at step two that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Id.* at 1069 (alterations in original omitted). The court held that analysis inadequate because it "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments." *Id.*

In analyzing mental impairments at step two, the ALJ cited the medical record and Plaintiff's function report and found Plaintiff had mild limitations in all four functional areas. AR 15. The ALJ also found the opinions of the state agency mental health physicians to be persuasive. *Id.* Explicitly recognizing that the RFC assessment requires a more detailed assessment than the step-

---

Doc. 20, at 7-8. But an ALJ need not ask the VE about limitations not included in the RFC. *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").

two severity analysis, the ALJ stated that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.* Thus, "the ALJ considered Plaintiff's mental impairment in making an RFC determination and did not improperly rely on the step-two assessment in place of an RFC analysis." *Williams v. Berryhill*, No. CIV-17-1199-G, 2019 WL 1199861, at *5 (W.D. Okla. Mar. 14, 2019) (finding the ALJ cited to medical evidence in determining the claimant had mild limitations in the Paragraph B analysis, considered the claimant's own statements about her activities of daily living and socializing efforts, stated he considered all of the claimant's symptoms, and "expressly distinguished his rating of the severity of mental impairments at step two from the 'more detailed assessment' required for the mental-condition-related aspect of the RFC finding").

Even if the ALJ's analysis was technically deficient, the Court agrees with the Commissioner that such error is harmless. Doc. 24, at 11. In a post-*Wells* case, an ALJ stated at step two that the RFC "reflects the degree of limitation the undersigned has found" and "did not engage in any analysis of mental functions and how they may be impacted (or not) by [the claimant's] medically determinable mental impairments" at step four. *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). The court stated that "[i]t appears,

12

therefore, that the ALJ failed to employ the step-four analytical procedure prescribed by the regulations." *Id.* But the court found the ALJ's error was harmless "[b]ecause the evidence . . . d[id] not support assessing any functional limitations from mental impairments." *Id.*; *see also Gallegos v. Saul*, 2020 WL 5506113, at *5 (D.N.M. Sept. 11, 2020) ("Thus, under *Wells* and *Alvey*, the Court does not reverse simply because it determines that the ALJ substituted a step-two finding for a comprehensive discussion at step four. The Court must find that the error is harmful in the sense that a comprehensive discussion at step four could have resulted in functional limitations in the RFC."). Other than Plaintiff's argument that he has limitations in interacting with supervisors—an argument unsupported by evidence from the record—he does not argue any additional mental limitations were warranted. So the Court finds that any error would be harmless. *See Williams*, 2019 WL 1199861, at *6 ("Absent support in the record for the limitations now claimed by Plaintiff, the ALJ did not err by failing to include those limitations in the RFC assessment.").

### 4.   The ALJ properly considered Plaintiff's hand injury.

In December 2013, Plaintiff had an accident involving a table saw, causing the laceration and fracture of his left thumb and index finger as well as the partial amputation of his left thumb. AR 658-68, 811-23. A functional capacity assessment from November 2013 indicated his grip strength returned to normal. *Id.* at 596. At his December 13, 2018 hearing, Plaintiff testified his

left hand had recovered. *Id.* at 304. In his discussion regarding severity at step two, the ALJ noted Plaintiff's "history of left hand injury, status post December 2013 surgery" and cited the hospital records. *Id.* at 14. The ALJ noted that Plaintiff "testified that he had recovered from his left hand injury by his amended alleged onset date." *Id.*

Plaintiff contends because the ALJ acknowledged his hand injury as a non-severe impairment at step two, he was "bound to acknowledge at least some hand limitations in his hypothetical question and RFC, or explain why he found no hand limitations." Doc. 20, at 10. Finding that Plaintiff had a hand impairment did not bind the ALJ to include hand-related limitations in the RFC. *See Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("The mere diagnosis of a condition does not establish its severity or any resulting work limitations."); *Baker v. Berryhill*, No. CIV-17-500-STE, 2017 WL 6420763, at *4 (W.D. Okla. Dec. 15, 2017) (finding the plaintiff was wrong believing even "a 'severe' impairment should necessarily result in related limitations in the RFC"). Nor did Plaintiff identify any functional limitations related to his left hand during the relevant period.[9] This is fatal to his claim. *See McAnally v.*

---

[9]     At best, Plaintiff identifies objective test results suggesting a reduced range of motion and grip strength in his left hand in March 2014—over two years before the period of disability here. AR 203. These test results were not part of the record before the ALJ, and the Appeals Council declined to admit them because they were not part of the relevant time period. *Id.* at 2. Because the Appeals Council rejected the evidence, "it plays no role in judicial review."

*Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that, with regard to her hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations." (internal quotation and alternations omitted)); *Nelson v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-275-F, 2018 WL 1937113, at *5 (W.D. Okla. Mar. 30, 2018) ("Nonetheless, Plaintiff fails to suggest just what RFC limitations the ALJ should have included and to explain why, based on the evidence she cites, he should have done so. Plaintiff simply leaves the court to speculate and, as such, fails to establish error regarding the ALJ's RFC assessment." (internal citation omitted)), *adopted*, 2018 WL 1937080 (W.D. Okla. Apr. 24, 2018).

Because the ALJ did not find any limitations in the RFC, he was not required to inquire about possible hand limitations in his hypothetical to the VE. *Smith*, 821 F.3d at 1270 ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."). As a result, the ALJ did not err in his consideration of Plaintiff's hand injury.

---

*Krauser*, 638 F.3d at 1328. Plaintiff did not challenge the Appeals Council's decision to reject the evidence.

**5.    The ALJ properly considered the treating physician's opinion and the functional capacity evaluation.**

Plaintiff argues "[t]he ALJ failed to properly evaluate the medical source evidence," in relation to his treating physician's conclusions and the functional evaluation about Plaintiff's ability to "crawl, climb, []squat . . . bend or stoop." Doc. 20, at 10.

In May 2013, Plaintiff's treating physician, Dr. David Holden, found Plaintiff could return to light-duty work that was primarily sitting or sedentary work, and could drive, sit or stand. AR 649. In June 2013, Dr. Holden found Plaintiff could occasionally walk, frequently drive, but could not crawl, kneel, squat, climb, bend, stoop, or twist. *Id.* at 643. Later that month, Dr. Holden again limited Plaintiff to sitting or sedentary work. *Id.* at 637. In July, Dr. Holden found Plaintiff could occasionally walk, kneel, bend, stoop, and twist, could frequently drive, but could not crawl, squat, or climb. *Id.* at 630. In August, Dr. Holden continued the same restrictions, except also restricting Plaintiff to no kneeling. *Id.* at 624. In September 2013, Dr. Holden found Plaintiff could perform light duty work with walking, sitting, standing, or driving, but that only occasionally bend, stoop, or twist, and could not crawl, climb, or squat. *Id.* at 619. In October 2013, Dr. David Holden removed the limitations on bending, stooping, or twisting. *Id.* at 614. In November 2013, Dr.

Holden continued the light duty restrictions pending a functional capacity examination. *Id.* at 610.

Plaintiff underwent a functional capacity evaluation conducted by Landon Kersey, ATC, LAT.[10] *Id.* at 591-99. He concluded Plaintiff could push up to 93 pounds, pull up to 133 pounds, lift or carry up to 20 pounds, and lift overhead up to 55 pounds. *Id.* at 592. He also found Plaintiff could not climb stairs or ladders, bend, stoop, or squat. *Id.*

The ALJ addressed both the functional capacity examination and Dr. Holden's statements about his ability to return to light-duty work. *Id.* at 18. Then, along with the opinions of the state agency physicians, who found claimant could perform light work, the ALJ found:

> In evaluating these opinions, the undersigned considered the evidence supporting them in the opinion itself, as well as the consistency with the overall evidence of record. In examination, the claimant generally had normal gait, with some periods of guarded or limping gait. The claimant had normal strength. The claimant had somewhat reduced range of motion, due to pain symptoms. These findings are consistent with a light level of work, based on the claimant's normal gait and strength. For this reason, the above opinions were considered in light of this consistency.

*Id.* (internal citations omitted).

---

[10]    The ALJ mistakenly stated Dr. Holden performed the functional capacity examination rather than Mr. Kersey. AR 18. Plaintiff asserts no error resulting from this discrepancy.

Because Plaintiff filed his claim after March 27, 2017, *id.* at 11, new regulations apply to the consideration of medical opinions. *See* 20 C.F.R. § 404.1520c. Under these new regulations, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." *Id.* § 404.1520c(a). When considering a medical opinion, the ALJ considers supportability, consistency, relationship with the claimant, specialization, and other factors which tend to support or contradict a medical opinion. *Id.* § 404.1520c(c). The ALJ must explain how persuasive he considered the opinion. *Id.* § 404.1520c(b). In this explanation, he must discuss the supportability and consistency factors, but he need not explain his consideration of the other factors. *Id.* § 404.1520c(b)(2).

Citing regulations in effect for claims filed before March 27, 2017,[11] Plaintiff contends the ALJ did not properly evaluate Dr. Holden's opinion because he did not determine whether he gave the treating physician's opinion controlling weight. Doc. 20, at 11-12 (citing 20 C.F.R. § 404.1527). But the ALJ did not have to give any specific weight to Dr. Holden's opinion. *See* 20 C.F.R.

---

[11]      In his reply brief, Plaintiff suggests the prior regulations are appropriate because the ALJ "did a *de facto* reopening of the prior decision." Doc. 28, at 1. Because the Court finds the ALJ did not reopen the prior decision, this argument lacks merit.

§ 404.1520c(a); *see also Terri Ann B. v. Saul*, 2020 WL 7316099, at *7 (D. Kan. Dec. 11, 2020) ("Plaintiff's remaining arguments are based on the premise of the treating physician rule—that medical source opinions should be relatively weighed in accordance with certain rigid rules. That is no longer the case.").

Plaintiff also faults the ALJ for not mentioning the functional capacity evaluation showed his inability to bend or stoop. Doc. 20, at 11. He contends this failure amounts to improper picking and choosing from the record.[12] If the ALJ erred in this regard, the Court agrees any such error was harmless. *See* Doc. 24, at 10, 13. The eyeglass polisher job does not require stooping. DICOT §713.684-038, 1991 WL 679267. Although bending "is not listed as a physical demand component" in the DICOT, stooping is "defined as bending the body downward and forward by bending the spine at the waist" and crouching "is defined as bending the body downward and forward by bending the legs and spine." *Morris v. Barnhart*, 2006 WL 4045935, at *4 (D. Kan. Nov. 21, 2006); *see also Ritchie B. v. Berryhill*, 2019 WL 1571278, at *5 (C.D. Cal. Apr. 11, 2019) ("Bending is not addressed by the [DICOT], but SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983), defines stooping and crouching as types of bending."). Nothing in the DICOT description of eyeglass polisher suggests

---

[12]     Plaintiff cites SSR 85-15 for the proposition that "[s]ome stooping is required to do almost any kind of work." Doc. 20, at 11; Doc. 28, at 3.

it requires bending. DICOT §713.684-038, 1991 WL 679267. As a result, any error related to bending is harmless. *See Morris*, 2006 WL 4045935, at *4 ("[A]lthough the ALJ erred by failing to include in the hypothetical question the specific limitation of being rarely able to bend, the court finds that this error constitutes harmless error based on the fact that stooping and crouching (and therefore bending) are activities or conditions which do not exist in any of the six jobs identified by the VE and the ALJ according to the [DICOT].").[13]

### 6. Plaintiff's claim about the severity of his left leg condition lacks merit.

Plaintiff notes that "he now demonstrates decreased sensation of the left leg in the L-5 dermatome." Doc. 20, at 11 (citing AR 1075). Plaintiff did not elaborate on the significance of this finding. In the response brief, the Commissioner noted this single finding did not "detract[] from the substantial evidentiary support for the ALJ's decision" and considered it to be an "implicit invitation[] to reweigh the evidence." Doc. 24, at 12. In his reply, Plaintiff argues that "[i]t is not unreasonable to couple the decreased sensation to his

---

[13]    Taking a contrary position, Plaintiff also describes the functional capacity examination and Dr. Holden's opinions as "extraordinarily stale" and argues the ALJ should not have relied on the information. Doc. 20, at 11. But the ALJ did not "rely" on the opinions. Instead, he noted that while those opinions showed Plaintiff could perform light work, "when taken together with [Plaintiff's] extensive injury of weakness, a more sedentary limitation is preferred." AR 18.

complaints of back pain" and that "[d]ecreased sensation in a limb can be of listing level importance." Doc. 28, at 3.[14]

As for his picking-and-choosing argument, 20 C.F.R. § 404.1520(a)(3) requires the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled," and the ALJ must "discuss the significantly probative evidence he rejects." *Carpenter*, 537 F.3d at 1266 (internal quotation marks and citation omitted). The ALJ considered the evidence. *See* AR 18 (citing "B13F," the same page from the medical record indicating decreased sensation of the left leg). Plaintiff does not explicitly argue the evidence is significantly probative, but he baldly asserts in his reply brief that the decreased sensation may relate to his complaints of back pain. Doc. 28, at 3. The Court does not find Plaintiff's speculative argument persuasive.

### C. The ALJ did not err in his step-four analysis because he properly considered the demands of Plaintiff's past relevant work.

Step four of the sequential evaluation process has three phases where the ALJ must: (1) "evaluate a claimant's physical and mental [RFC]"; (2)

---

[14] To the extent Plaintiff tries to raise a new listing-level argument in his reply brief, he has waived any right to present it. *Kruse v. Astrue*, 436 F. App'x 879, 885 n.2 (10th Cir. 2011) ("Arguments presented for the first time in a reply brief are waived.").

"determine the physical and mental demands of the claimant's past relevant work"; and (3) "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Plaintiff contends the ALJ erred at phases one and two (and as a result of such failures, phase three as well). Doc. 20, at 8-9.

Plaintiff contends the ALJ did not perform a proper analysis of the mental demands of Plaintiff's past relevant work. *Id.* at 8. At the second phase of step four, the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. Plaintiff argues the ALJ "did not specifically determine all of the mental demands of Claimant's PRW, nor did he ask the VE about them." Doc. 20, at 8.

At the hearing, the ALJ cited the DICOT listing for eyeglass polisher and asked the VE whether a hypothetical claimant could perform the job with various restrictions. AR 313-15. In the decision, the ALJ noted that he posed a hypothetical question to the VE reflecting the RFC contained in the decision and that the VE testified that Plaintiff could return to his past work as an eyeglass polisher as generally performed and as Plaintiff performed it. *Id.* at 19. The ALJ then "accept[ed] the testimony of the impartial [VE] as

22

persuasive" and "noted that the impartial [VE] testified that her testimony was consistent with the [DICOT]"[15] *Id.*

The Court first notes that the ALJ determined Plaintiff had no mental limitations in the RFC at step one. As discussed above, the ALJ did not err in formulating the RFC. Thus, any inquiry into the mental demands of his past relevant work is superfluous to the step four analysis. *See Winfrey*, 92 F.3d at 1024 ("To make the necessary findings, the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations." (internal quotation marks omitted)).

Further, the ALJ's analysis of the demands of Plaintiff's past relevant work was sufficient. "An ALJ may rely on information supplied by the VE at step four." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (internal quotation marks and citation omitted). Here, the ALJ relied on the VE's testimony that a hypothetical claimant could meet the DICOT demands of eyeglass polisher. AR 19. Such analysis is sufficient at this phase of step four. *See Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847-48 (10th Cir. 2018) (holding "the ALJ adequately discharged his step four responsibilities" where the VE responded that a hypothetical claimant could perform the claimant's past

---

[15]    The ALJ also noted that the VE also relied on her own knowledge about the sit-stand option because the DICOT does not give guidance on that issue. AR 19.

relevant work with certain limitations and the ALJ approvingly cited the VE's testimony and its consistency with the DICOT); *Lowery v. Comm'r of Soc. Sec.*, No. CIV-18-512-R, 2019 WL 1234354, at *4 (W.D. Okla. Feb. 21, 2019) ("By citing the [DICOT], the ALJ incorporated that agency-approved source by reference in his decision. This served adequately to establish the ALJ's findings regarding the demands of Plaintiff's past relevant work at phase two of step four." (internal citation omitted)), *adopted,* 2019 WL 1234338 (W.D. Okla. Mar. 15, 2019). Thus, Plaintiff's assertion of error lacks merit.

## IV.    Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 26th day of March, 2021.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

24